J-S35028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: G.E.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: W.S., LEGAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 12 WDA 2017 |

Appeal from the Decree November 30, 2016
In the Court of Common Pleas of Erie County
Civil Division at No(s):  69 In Adoption 2016

BEFORE:   LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED JULY 27, 2017**

Appellant, W.S. ("Father"), appeals from the decree in the Erie County Court of Common Pleas, which terminated his parental rights to his minor child, G.E.S ("Child").  Counsel for Father has also filed with this Court both a petition for leave to withdraw as counsel and a brief pursuant to **Anders v. California**, 87 S. Ct. 1396 (1967).  We grant counsel's petition for leave to withdraw and affirm the decision of the trial court.

On August 6, 2015, the Erie County Office of Children and Youth ("OCY") obtained an emergency protective order to ensure Child's safety after Child's mother ("Mother") was admitted to a hospital for a report of

_____

[*] Former Justice specially assigned to the Superior Court.

chest pain.[1]   Child was with Mother at the time, and they were homeless.

OCY learned of Mother's mental health problems, history of substance

abuse, unstable housing, and lack of necessities for Child.   Father was not

known to OCY at the time, and Mother refused to cooperate with OCY.   Child

was placed in the legal and physical custody of OCY.

OCY filed a dependency petition on August 10, 2015, which listed

Mother as the only parent.   On August 14, 2015, OCY amended its petition

to include Father.   As to Father, OCY alleged he was not an active caregiver

for Child, might not be Child's biological parent, and was the subject of a

protection from abuse ("PFA") order for multiple domestic violence incidents

against Mother.   At least one of the domestic violence incidents occurred in

the presence of Child.

At the August 18, 2015 adjudicatory hearing before a master, the

parties agreed to amend the dependency petition to reflect that Father and

Mother married in May of 2012, approximately one month before Child's

birth and that Father participated in the upbringing of Child until he and

Mother separated in April of 2015.   At the hearing, Mother asserted Child's

biological father was E.A.   OCY requested paternity testing, but Father

objected based on estoppel.   The master concluded paternity testing was not

_____

[1] We derive the relevant facts from a previous decision in this matter.  ***In
Interest of G.S.***, 159 A.3d 1009 (Pa. Super. 2016) (unpublished
memorandum).

required at that time and found child dependent. The trial court adopted the master's recommendations on August 21, 2015.

Following a permanency review hearing in September 2015, the trial court entered a dispositional order indicating that the current placement goal for Child was "return to parent or guardian." The court ordered Father to (1) cooperate with OCY, (2) attend and complete a domestic violence/anger management program, (3) provide for the health and safety of Child during visitation, (4) alternate attendance at Child's medical appointments with Child's mother, and (5) demonstrate an understanding of the information provided by healthcare professionals. The court directed Father to undergo a psychological assessment.

In December 2015, the trial court convened a permanency review hearing. OCY called Dr. Peter von Korff to testify regarding his psychological evaluations of Father. According to Dr. von Korff, Father exhibited a schizotypal personality disorder that affected his ability to care for Child and would need an anger management program, as well as years of individual mental health treatment, before he could safely parent Child. The doctor noted that Father did not acknowledge having mental health issues or a need for treatment.

In December 2015, the trial court entered its permanency review order. The court permitted Father one supervised visit with Child and granted OCY's request to add the concurrent goal of adoption. The court did not order services for Father, but directed the parties to address whether a

paternity test was performed and whether it was in Child's best interest to continue providing services to Father.

At the permanency review hearing on February 1, 2016, the trial court indicated DNA testing confirmed that Father was not Child's biological parent. OCY again requested cessation of services to Father, arguing that it did "not want to look at [Father] as a resource" because he was not a natural parent, he exposed Child to domestic violence, and he continued to have serious mental health issues that remained untreated. OCY and Child's guardian *ad litem* asserted it would be in Child's best interest to discontinue Father's visitation. Father's counsel requested a bonding assessment. At the conclusion of the hearing, the trial court questioned Father. Father denied having mental health issues and requested a new mental health evaluation. The court denied the request for an independent mental health evaluation.

In February 2016, the court entered its permanency review order directing OCY to discontinue services to Father until a bonding assessment was completed. However, the goal of reunification concurrent with adoption remained unchanged. The court indicated Father made "moderate progress" toward alleviating the circumstances necessitating placement.

In May 2016, the trial court held a permanency review hearing, Father was not present, but was represented by counsel. OCY requested to have Father "removed from the case" and asserted it would pursue termination of his rights under 23 Pa.C.S. § 2511(a)(3). Dr. von Korff's bonding

assessment was made part of the record without objection. The trial court entered an order indicating that Father was noncompliant and made no progress in alleviating the problems that necessitated the original placement. The court discontinued OCY's services to Father. Child's goal, however, remained reunification concurrent with adoption. Father's counsel filed a motion to withdraw the May 2016 order and reopen the record based on Father's nonattendance. The court denied the motion. Father filed a Notice of Appeal as to the goal change. This Court affirmed the decision of the trial court. *See In Interest of G.S.*, 159 A.23 1009 (Pa. Super. 2016) (unpublished memorandum).

In July 2017, OCY filed a petition for involuntary termination of parental rights. A termination hearing was held in November 2016, and by decree dated November 30, 2016, the trial court terminated Father's parental rights. In December 2016, Father's counsel timely filed a notice of appeal on Father's behalf as well as a statement pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive opinion. On March 7, 2017, Father's counsel filed an application to withdraw as counsel and a brief pursuant to *Anders.*

The *Anders* brief raises the following issues on appeal:

A. Whether the Orphans' Court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa. C.S.A. §2511(a)(2)?

B. Whether the Orphans' Court committed an error of law and/or abused its discretion when it concluded that termination of

parental rights was supported by clear and convincing evidence pursuant to 23 Pa. C.S.A. §2511(a)(5), (8)?

C. Whether the Orphans' Court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and   convincing evidence pursuant to 23 Pa. C.S.A. §2511(b)?

Initially, we address the *Anders* brief and petition seeking permission to withdraw.  The principles that guide our review are as follows:

> When counsel files an *Anders* brief, this Court may not review the merits without first addressing counsel's request to withdraw.  *Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa. Super. 2013).  In *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992), this Court extended *Anders* principles to appeals involving the termination of parental rights.  *Id.* at 1275.  In these cases, counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an *Anders* brief.  *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004).  We review counsel's *Anders* brief for compliance with the requirements set forth by our Supreme Court in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 361.

> Additionally, pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005) and its progeny, "[c]ounsel also must provide a copy of the *Anders* brief to his client.  Attending the brief must be a letter that advises the client of his right to:

(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*), quoting **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa. Super. 2004).

**In re X.J.**, 105 A.3d 1, 3-4 (Pa. Super. 2014).

Here, we conclude that Father's counsel has complied with the requirements as set forth above. Counsel has provided Father with a copy of the **Anders** brief and indicated in her correspondence that Father may proceed *pro se* or retain new counsel. In her brief, counsel references facts of record that might arguably support Father's appeal and sets forth her conclusion that the appeal is frivolous. **See Anders** Brief at 14-19. Accordingly, we undertake our independent review of the record to determine whether Father's appeal is wholly frivolous.

Our review of an order granting a petition for involuntary termination of parental rights is well settled:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determination of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.;** [**In re**]

- 7 -

> ***R.I.S.***, [36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***, ***see also Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observe that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and the parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

"[T]he burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Father's parental rights under sections 2511(a)(2), (3), (5), (8) and 2511(b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 20014) (*en banc*). As such we will focus on 2511(a)(3) and 2511(b), which provide as follows:[2]

> **§ 2511. Grounds for involuntary termination**
>
> **(a)** **General rule.** – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>        \*     \*     \*
>
> (3) [T]he parent is presumptive but not the natural father of said child[.]
>
>        \*     \*     \*
>
> **(b) Other considerations.** – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

---

[2] Technically, Father does not preserve a challenge to this ground for termination.

We will first examine the court's termination of Father's parental rights pursuant to Section 2511(a)(3). The trial court reasoned as follows:

W.S. is the presumptive, not the natural father of the Child, therefore, his parental rights were terminated under, *inter alia*, Section 2511(a)(3). In doing so, the court was cognizant of the Adoption Act's use of discretionary wording in relation to the grounds upon which it "may" terminate a parent's rights. Arguably, there are a number of legal theories/considerations the court may have used to deny OCY's Petition under Section 2511(a)(3), regardless of W.S.'s lack of paternity, had it believed doing so was in the Child's best interest, most notably paternity by estoppel. However, such is not the case here. As discussed in more detail below regarding alternative grounds for termination, this court is confident that the Child's interests are best served by eliminating all means by which W.S. might continue to exercise dominion or control over the Child, her natural mother, and/or any prospective adoptive resources in the future.

Trial Court Opinion, 1/12/17, at 5 (citations omitted).

As there is clear and convincing evidence in the record that supports the trial court's termination of Father's parental rights under Section 2511(a)(3), we affirm the trial court's decision. ***In re Adoption of S.P.***, 47 A.3d at 826-827.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Pursuant to Section 2511(b), the court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of a child.

In March of 2016, Appellant and Child participated in a bonding assessment. In the evaluation, Dr. Peter von Korff opined:

The assessment evidence[s] a tenuous and troubled attachment between [Father] and [Child]. Observations obtained in the office setting were consistent with an insecure attachment… There was generally little eye contact and very little sense of developing shared ideas. His departure from the room and his subsequent return did nothing to alter [Child's] pattern of behavior. [Child] simply carried on with her independent play interest.

A mixture of affectionate feeling, emotional strain and remoteness was observed. Examples of confusion and uncertainty in the emotional relationship included the contrast between [Child's] very slow warming to [Father] and her tearful request to go with him at the close of the meeting.

\* \* \*

The writer's observations suggested that a sub-optimal and insecure early attachment relationship between parent and child has been significantly degraded by their protracted separation[.]

Bonding Assessment, 3/23/16, at 7-8.

Gregory Phillips, caseworker for the Erie County Office of Children and Youth, testified that Father never contacted him to inquire about Child's well-being. Notes of Testimony, 11/29/16, at 63. Mr. Phillips further stated that Child has never asked about Father. *Id.* at 66. Mr. Phillips testified that termination of Father's rights would not cause a detrimental impact of Child and that termination is in her best interest. *Id.*

Upon review, we find no abuse of discretion in the trial court's termination of Father's parental rights. Our independent review of the record reveals no non-frivolous claims that Father could have raised, and we

agree with Counsel that this appeal is wholly frivolous. We therefore affirm the termination decree and grant Counsel's petition to withdraw.

Decree affirmed. Petition to withdraw is granted.

Judge Lazarus joins the memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2017